

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**AUG 0 1 2019**

**JAMES W. McCORMACK, CLERK**
By:_____
                    **DEP CLERK**

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DENISE WRIGHT**                                                      **PLAINTIFF**

v.                        **CASE NO. 4:17-cv-798 BSM**

**ROBERT WILKIE, Acting Secretary,**                      **DEFENDANT**
**DEPARTMENT OF VETERANS AFFAIRS,**
**IN HIS OFFICIAL CAPCITY**

### PLAINTIFF RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

The Court should deny Defendant Department of Veterans Affairs ("VA") Motion for Summary Judgement and find that Plaintiff Denise Wright ("Wright"), *pro se* an African-American female, filed this discrimination complaint in this action on December 5, 2017, has enough evidence to support Plaintiff's claims Desperate Treatment concerning (1.) Duty Hours (tour change) denied, (2.) Pay and Allowances (Premium Pay, Night Differential, Overtime, Holiday Pay), 014, (3) Time and Attendance based on Race, and Reprisal/Retaliation based on prior EEO Activity; all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) and (2), and Equal Pay/Compensation Discrimination, based on sex, in violation of The Equal Pay Act of 1963, 29 U.S.C. § 206(d). Wright opposes the motion. Wright can meet her burden to prove she was discriminated against these claims.

Wright proceeded to amend her pleadings, concerning Disability Discrimination after a fall at work; September 3, 2018; due to the subsequent conduct was like or reasonably related. However, the Court did not allow Wright to amend her pleadings to include the disability discrimination claim; due to not exhausting administrative remedies. See Order, Doc. No. 45.

1

Wright has exhausted her administrative remedies since Order, Doc. No. 45, concerning Disability Discrimination.

For the reasons stated below, the motion for summary judgement should not be granted.

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the laws of the United States, specifically, 42 U.S.C. § 2000 and 42 U.S.C. § 1981.

2. The Eastern District of Arkansas, Little Rock Division, has personal jurisdiction over Defendants because Defendants conduct business in this judicial District.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this District and because Defendant can be found in this District.
   Further, Plaintiff exhausted her administrative remedies through the Equal Employment Opportunity Commission and received her Notice of Right to Sue on or about 2011, 2013 and 2015 (all 3).

## I.    FACTS

1. Wright began working at Central Arkansas Veterans Healthcare System ("CAVHS") in 2007 as a medical support assistant ("MSA") See Statement of Undisputed Facts. **Undisputed.**

2. When Wright began working as an MSA in 2007 she was a Grade 4; Step 1 employee and her salary was $25,797.  **Undisputed.**

3. Wright subsequently became a Patient Services Assistant in the Mental Health Clinic. **Undisputed.**

4. In 2009, Wright filed an EEO administrative claim about Carla Smith, her supervisor in the Mental Health Clinic.  **Undisputed.**

5. In 2011, Wright filed an EEO administrative claim about Chad Reynolds, her supervisor in the Mental Health Clinic. **Undisputed.**

6. In 2013, Wright filed an EEO administrative claim about Anthony Farman, her supervisor in the Mental Health Clinic. **Undisputed.**

7. Wright left her position in the Mental Health Clinic in November 2013 and became an MSA in 4D, the Stepdown Unit, on December 1, 2013. **Undisputed.**

8. When Wright was hired in 4D her immediate supervisor was the nurse manager, Shawnda Swearingen.  **Undisputed.**

9. Currently, Wright's immediate supervisor is the Nurse Manager Rhonda Crutchfield. **Undisputed.**

10. Wright is currently a Grade 5, Step 7 employee.  **Undisputed.**

11. When Wright stepped up to Grade 5, Step 7 from Grade 5, Step 6 on August 6, 2017, Wright's total salary was $39,416. **Undisputed.**

12. Since she started in December 2013, Wright's regularly assigned shift in 4D has been the 11:30pm – 8:00am Tour. **Disputed.  I worked Midnight to 8am about 1 month from 2013 to 2014.  Att. 1 Ex. A and Att. 7, Ex. G**

13. There is no evidence that any MSA working on 4D since Wright Started in 2013 has worked the night tour at any time other than 11:30pm to 8:00am. **Disputed. Other MSA's work 4D Stepdown from time to time; at 11:30pm to 8am concerning overtime/tour coverage.** Compl. Doc. No. 2 and Doc. No. 4

14. On February 23, 2015, the inclement weather policy was in effect at CAVHS. **Undisputed.**

15. Wright was scheduled to work on February 23, 2015, but she called in to work because she slipped and fell in the snow. **Undisputed.**

16. When she returned to work on February 25, 2015, Wright made a request for sick leave. **Undisputed.**

17. Her request was not approved, and she was listed as AWOL. *Id.* When the inclement weather policy is in effect, it is within the supervisor's discretion whether to grant sick leave that had not been previously approved. **Undisputed.** Other employees on the 4D Stepdown Unit; to include Nurse manager Crutchfield and other nurses, Andrea James, and Lisa Thomas that work Direct Care also called in February 23, 2015, however those employees were not AWOL. See attach. Timecard

18. Wright filed her Equal Employment Opportunity ("EEO") administrative claim with the VA on or about February 26, 2015. **Undisputed.**

19. The issues raised in Wright's EEO administrative claim were about alleged discrimination on January 20, 2015, February 16, 2015, See Timecard; Holiday Excused February 23, 2015, See Timecard AWOL and May 28, 2015.

4

**Disputed. I also raised administrative claims in 2014; however, the Agency delayed giving me an answer concerning paying me for my holidays; as well as delaying the response concerning changing my tour of duty.  It is when I received the answer from executive manager Sandra Foster; which is Kurt Armbrust and Denise Wright upline management official within Nursing Services; that she was going to assure that all MSA's Tours of Duty be consistent to the 3 tours; which is 0730am – 4pm, 3:30pm – midnight, and 11:30pm – 8:00am. She responded for the last time February 26, 2015 and I filed this EEO the same day.**  Att. 1, Ex. A and Compl. Doc. No. 2

20.   Neither Shawnda Swearingen nor Rhonda Crutchfield had knowledge of Wright's prior EEO activity. **Disputed.   Ms. Goins testified to this concerning her Transcript of Testimony Att. 4, Ex. D, and Anthony Farnam, my previous supervisor informed me that he informed Nursing Services of everything about me; his words "the good and the bad" Att. 12, Ex. L**

21. Linda Jones is the Chief of payroll at CAVHS.  **Undisputed.**

22. According to Jones, employees at CAVHS are paid night differential when they work the night shift. **Undisputed.**

23. Some employees, such as nurses, are paid night differential when they work the night shift. **Undisputed.**

24. Therefore, Title 38 employees get night differential for the whole tour while Title 5 employees earn night differential from 6pm to 6am. **Disputed. I am not sure, since I am Hybrid Title 38.** Att. 8. Ex. H

25. As an MSA, Wright is a Title 5 employee. **Disputed. Wright is Hybrid Title 38 an is entitled to the Night Tour Differentials to include the entire 8 hours worked.**

Att. 8. Ex. H **Also Linda Jones in payroll inform in her Transcript of Testimony that I am supposed to be getting the entire night differential for working all hours on the 11:30pm to 8am tour.** Att. 5 Ex. E

26. Wright is not aware of any MSA who receives night differential for their full tour. **Undisputed.**

27. Kurt Armbrust works in Medical Intensive Care Unit ("MICU") as an MSA. **Undisputed.**

28. Armbrust started working as an MSA at CAVHS in 2003. **Undisputed.**

29. When he began working at CAVHS in 2003, Armbrust was a Grade 4, Step 1 MSA, and his total salary was $22,968. **Undisputed.**

30. Until recently, Armbrust's supervisor in the MICU was nurse manager Jacqueline Nunn. **Undisputed.**

31. Armbrust has never been supervised by Shawnda Swearengin or Rhonda Crutchfield. **Disputed. When Kurt manager Jacqueline Nunn is out, my Supervisors; Shawnda Swearengin and Rhonda Crutchfield supervises MICU. When my managers are out, Ms. Nunn supervises 4D-Stepdown.** Att. 18, Ex. R

6

32. When Armbrust received a step increase from Grade 5, Step 6, to Grade 5, Step 7 in 2013, his total salary was 37,576. **Undisputed**

## PLAINTIFF'S STATEMENT OFADDITIONAL MATERIAL FACTS

1.  Denise Wright ("Wright"), Plaintiff; is a Black African American, Female.
    Att. 1, Ex. A

2.  Kurt Armbrust ("Armbrust"), Comparator, is a White Caucasian, Male.
    Att. 1, Ex. A

3.  Armbrust is a Medical Support Assistant at Central Arkansas Veterans Healthcare
    Systems (VA).  Attach. 3, Ex. D. Armbrust, pg. 4; 5-10

4.  Armbrust have worked the Tour of Duty; per Official Timecards and
    Pay/Allowances; Midnight to 8am from January 9, 2005 through July 22, 2018.
    Attach. 3, Ex. D. Armbrust, pg. 16;4-6 & pg. 4;18-19

5.  Since January 9, 2005 and currently Armbrust is still allowed to work and start his
    Tour of Duty continuously at Midnight. Attach. 3, Ex. D. Armbrust, pg.15; 15-16

6.  At the time when I requested my tour change; from 11:30pm – 8:00am to Midnight
    to 8am to be consistent with the other 3 to 4 MSA's working Midnight to 8:am I was
    denied. Attach. 3, Ex. D. Armbrust, pg.8; 2-2

7.  Wright worked the midnight to 8am tour of duty approximately one month. The
    Agency tried to delete that information concerning my timecard. How it is currently
    present and documented on a corrected time care back in 2015 where it is visible the
    Agency gave me 30 minutes of Comp Time, suppose to be from 11:30pm to 8am;
    however, they changed that also, to 30 minutes of comp time from 8am – 0830am so

it wouldn't show that I worked the midnight tour of duty for approximately 1 month. Attach. 3, Ex. D. Armbrust, pg.8; 17-18 Att. 7 Ex. G and Att. 1, Ex. A

8.  December 2013 Christmas, Wright was paid Holiday Pay.  Shawnda Swearengin ("Swearengin"); Nurse Manager 4D- Stepdown and Assistant Nurse Manager, Rhonda Crutchfield("Crutchfield"), changed my Tour of Duty from 11:30pm – 8am. to Midnight to 8am; because I was there when midnight came in; so, I got paid for that Christmas.  Att. 1, Ex. A and Att. 7, Ex. G

9.  December 2013 – February 2014 I worked the midnight to 8am tour of duty. I received Comp Time for the days that I had came in when working 11:30pm to 8am; due to me not taking a lunch break.  Swearengen came to me verbally and informed that if I continue to work midnight to 8am tour; that I would not get paid for Sunday Premium, therefore Swearengin changed me back to 11:30pm to 8am.  Swearengin informed me that she would change my tour back to midnight to 8am to get paid for Holidays like she did in 2013; Christmas.  I informed Swearengin that I would like it to be changed permanently; so, I want to have to go through what I am currently going through; and not getting paid when the holiday comes in at midnight.  A few months later I was informed that Kurt does get paid Sunday Premiums while currently having the pleasure and benefit of coming in at Midnight and receiving his Weekend Premiums. Att. 7, Ex. G and Att. Ex. A

10. January 7, 2015, I notice on my paystub that I still had not gotten paid for working Thanksgiving 2014 and Christmas 2014; I contacted my payroll technician; Linda Jones, she verified that I was supposed to get Holiday pay, due to me being their when midnight came in; previous to the Holidays. She instructed my Service

(Nursing) to issue corrected timecards so I would get paid for working the two

Holidays. Att. 1, Ex. A and Att. 7, Ex. G, DEF000951

11. February 2, 2015, Assistant Nurse Manager; Rhonda Crutchfield("Crutchfield"),

verbally made me aware that I didn't get paid on Thanksgiving 2014 and Christmas

2014; because I would have had to work the night of the Holiday; instead of getting

my Holiday when midnight hit prior to the Holiday as my Comparator; Kurt

Armbrust who Tour starts at Midnight. To 8am. at the time.  Wright requested a Tour

of Duty change from 11:30pm – 8:00am to Midnight – 8:00am. verbally to

Crutchfield and by way of email to Crutchfield and Shawnda Swearengin

("Swearengin"); Nurse Manager 4D- Stepdown.  *See* Compl., Doc 2. and Att. 1, Ex.

A

12. February 16, 2015 I was off duty on Holiday Excused. Att. 2, Ex. B

13. February 23, 2015, I called in and requested Sick Leave; due to ne slipping and

falling in the snow; cleaning snow off my windshield. Att. 1 Ex. A

14. February 25, 2015 Sick Leave Request denied.  Wright had sick leave hours.

available; however, Wright supervisors posted AWOL; not paid. Att. 1 Ex. A and Att.

2, Ex. B

15. In the Agency Sick Leave Policy, it does not state that employees have to come to

work if they are sick when an inclement policy is in effect. Att. 11, Ex. K

16. The Assistant Manager used Comp Time on the same day inclement weather was in

effect; which was also 02/23/2015.  Att. 14, Ex. N

17. May 28, 2015, Wright denied receiving all premiums worked concerning Saturday

Premiums.  Att. 7, Ex. G

18. Denise Wright do not get paid Premiums when she takes Annual Leave.  Wright took annual leave on March 5, 2015. No Premium paid.  Att. 7, Ex. G, DEF000953

19. Kurt Armbrust do get paid premiums while on Annual Leave.  Armbrust got paid Premium Pay while on leave March 23, 2015, Att. 7, Ex. G, DEF000902 and May 19, May 26, 2015.  Att. 7, Ex. G, DEF000903

20. Wright do not receive all night differential hours worked between 11:30pm – 8am.  Att. 7, Ex. G, DEF000978

21. Armbrust get to work over the 20 hours a week Sandra foster informed we cannot exceed.  Armbrust works 32 hours overtime every two weeks when he chooses to.  Att. 7, Ex. G, DEF000904

22. Wright is minimizing to overtime hours she works a week. 8 hours.  Att. 7, Ex. G, DEF000955, I also do not receive all hour's overtime and premiums worked, when I work overtime and holiday premiums.  Att. 7, Ex. G

## II.   ARGUMENT

In the Supreme Court holds that a charging party can prove unlawful discrimination indirectly by showing, for example, in a hiring case that: (1) the charging party is a member of a Title VII protected group; (2) he or she applied and was qualified for the position sought; (3) the job was not offered to him or her; and (4) the employer continued to seek applicants with similar qualifications. If the plaintiff can prove these four elements, the employer must show a legitimate lawful reason why the individual was not hired. The employee still may prevail if he or she

discredits the employer's asserted reason for not hiring him or her." *McDonnell Douglas Corp. v Green*,

In the Supreme Court holds that the Bennett Amendment, which incorporates the four affirmative defenses of the Equal Pay Act (EPA) into Title VII, does not limit Title VII pay discrimination claims to EPA claims. Title VII wage claims can be broader than EPA claims because Title VII, unlike the EPA, is "intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *County of Washington v. Gunther*,

In the Supreme Court holds that under the Equal Pay Act the allocation of proof in a pay discrimination case requires the plaintiff to prove that an employer pays an employee of one sex more than an employee of the other sex for substantially equal work. *Corning Glass Works v. Brennan*

## *CLAIMS FOR RELIEF*

### Disparate Treatment

"Title VII of 1964 prohibits discrimination in compensation and other terms, conditions, and privileges of employment. Thus, race or color discrimination may not be the basis for differences in pay or benefits, work assignments, performance evaluations, training, discipline or discharge, or any other area of employment".

1. Denise Wright is a member of a qualified protected class; (Black/African American; female).

2. Denise Wright requested in writing February 2nd, 2015; and was qualified for the change Tour of Duty; from 11:30pm - 8: 00a.m; to Midnight - 8: 00a.m; of the Agency.

3. Despite Denise Wright's qualifications, she was rejected and denied the opportunity/benefit to change her Tour of Duty from 11:30pm - 8: 00a.m; to Midnight - 8:00a.m.

4. After Denise Wright was rejected and denied, the Benefit/Opportunity; Change in Tour of Duty from 11:30pm – 8am to Midnight – 8am, remains available and the Agency continues to allow her Comparator; Kurt Armbrust; similar situated, who is not in the employee's protected class; to receive the Benefit/Opportunity to work Midnight to 8am; who has the same qualifications as Complainant.

**The Agency's Legitimate, Nondiscriminatory**
The Agency's Legitimate, Nondiscriminatory Reason is; a 30-minute Handoff is required for Patient Safety and a 30-minute lunch break is required to be taken out of our paycheck.

**Proving Pretext**
The Agency has given different reason at various times for its decisions; shifting justifications. Stating employees must do 30-minute handoffs and take 30-minute lunch breaks.

The Agency doesn't consistently follow its own legitimate, nondiscriminatory reason for making job decisions; applying the rules differently. Kurt Armbrust do not have to come

in 30 minutes prior to his Tour of Duty to do a handoff.  Kurt Armbrust do not have a 30-minute lunch break taken out of his pay stub; however, he is compensated for less time worked.

**Adverse Action**

On February 16, 2015, SF, SS, RC, and DR denied complainant's request to be paid holiday pay for Presidents Day. (Management had to change this from AWOL, because I was entitled Holiday Excused; according to company policies.

On February 23, 2015, SF, SS, RC, and DR charged complainant eight hours Absence Without Leave (AWOL). Other employees called in the same day Increment Policy and they were not AWOL. I have included attachments showing that it has been tampered with also.

On May 28, 2015, SF and SS denied complainant's request to be paid 16 hours premium pay instead of 15 hours for working on Saturdays, May 8, 2015 and May 15, 2015. And have continued not to pay me all night differential, premium pay, overtime, and holidays worked; continuous harassment.

The Agency allows my Comparator; Kurt Armbrust, that is similarly situated, does not share the same protected characteristic as me; to work Midnight to 8am, without coming in to work 30 minutes earlier as I do (11:30pm to 8am).  The Agency allows Kurt to not take a 30-minute lunch break out of his 8-hour tour of Duty nor does the Agency take out 30 minutes lunch out of his paycheck; but he eats lunch. However, the Agency treats me different and favors me less; making me come in and work more hours; 8.5; and the Agency takes a 30-minute lunch break out of my paycheck and Tour of Duty.  Kurt

Armbrust does not have to come in 30 minutes early as I do to do a Handoff.  The

Agency Favors Mr. Armbrust; a white Caucasian, male, non-protected characteristic;

treating me differently and less favorable.  Therefore; race and sex was the determinative

factor in Agency's employment decision; which is rejecting and denying me to be paid

Holiday Pay and rejecting and denying my request to change my Tour of Duty from

11:30pm – 8am to Midnight to 8am as my comparator Kurt C. Armbrust.  If it was not for

my race and sex then I would have gotten paid my holiday pay for every holiday worked

starting at Midnight to 8am; as Kurt; however, I was rejected and denied these special

benefits and privileges and treated less favorable; than Kurt C. Armbrust, a white

Caucasian, male.  I am present when midnight comes in on the holiday; 11:30pm; when

midnight hits Kurt gets holiday pay; however, I go pass midnight to 8am; no holiday pay

for me; come back in at 11:30pm ending of holiday and that is when my holiday pay

starts.  I am a Black African American, Female; and I would have not been denied,

rejected any employment benefits and privilege's and/or treated less favorable if I was a

white Caucasian, Male; these harmful unlawful actions would have never occurred.

| Basis | Claims | Dates of Occurrence |
|---|---|---|
| Sex | Compensation Discrimination | July 2015 |

## Equal Pay/Compensation

The Agency has also inflicted willful discrimination; upon me concerning Equal

Pay/Compensation Discrimination; basis is Sex; violating The Equal Pay Act of 1963.

29 U.S.C. § 206(d), paying my comparator(s) Kurt Armbrust more pay differentials and premiums than me.

In this case the Denise Wright has made a claim under the Equal Pay Act, a statute that prohibits an employer from paying women less than men for jobs that require substantially equal work.

Specifically, Denise Wright claims that she was paid less than (a) male employee(s); Kurt Armbrust even though she performed substantially equal work. The central provision of the Equal Pay Act is 29 U.S.C. §206(d)(1),

The Agency allows my Comparator; Kurt Armbrust, white, Caucasian Male; that is similarly situated, does not share the same protected characteristic as me; to work Midnight to 8am, without coming in to work 30 minutes earlier as I do (11:30pm to 8am).  The Agency allows Kurt to not take a 30-minute lunch break out of his 8-hour tour of Duty nor does the Agency take out 30 minutes lunch break out of his paycheck.  However, the Agency treats me different and less favorable; making me come in and work more hours; 8.5; and the Agency takes a 30-minute lunch break out of my paycheck and Tour of Duty.  Kurt Armbrust does not have to come in 30 minutes early to give a Handoff, however; I must come in 30 minutes before Kurt does, to give a handoff to receive a handoff from the previous Medical Support Assistant (MSA); if there is one present.  The Agency Favors Mr. Armbrust; a white Caucasian, male, non-protected characteristic; treating me differently and Favors me less; Kurt Armbrust get Compensated and paid more pay differentials and work less hours than me. In violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act of 1963.

**Equal Pay Act — Retaliation**

Denise Wright claims that The Agency discriminated against her because she opposed a practice
made unlawful by the Equal Pay Act.

First: Denise Wright filed a complaint, instituted a proceeding, and made an informal complaint
to her employer testified/agreed to testify in a proceeding asserting rights under the Equal
Pay Act.

Second: Denise Wright was subjected to a materially adverse action at the time, or after, the
protected conduct took place.

Third: There was a causal connection between [describe challenged activity] and Denise Wright
[describe plaintiff's protected activity].

Denise Wright was acting under a good faith belief that her rights under the Equal Pay Act were
violated.

Around or about the beginning of January 2015, Rhonda Crutchfield and I had a verbal
conversation in her office; about why my Holiday pay was not reflecting on my check stubs that
I worked on Thanksgiving 2014 and Christmas 2014. Rhonda Crutchfield then informed me that
my Holiday Pay starts on the day my tour of duty starts at 11:30pm; which is not when my
comparator Kurt Armbrust tour began; which is at Midnight to 8am. Even though I am here 30
minutes prior to midnight when the Holiday comes in, I have to wait until the following night to
receive my holiday pay; and not at midnight as Kurt. Therefore, the employees that worked
midnight to 8am would get the Holiday Pay as soon as midnight hit. Even thought I was present
30 minutes prior to midnight with the other employees that receive holiday pay when midnight

hits, I would have to wait to 1130pm the following night to receive holiday pay. I verbally requested to Rhonda Crutchfield that I wanted my tour of duty to be changed to midnight also so that I could be consistent with the other employees that was currently working the Tour of Duty; Midnight to 8am. Ms. Crutchfield stated, "that probably want happen, but I'll let Shawnda make that decision".

I followed up with Payroll Department and emailed my payroll technician; named Linda Smith; who informed me that I was supposed to receive Holiday pay for Thanksgiving 2014 and Christmas 2014, due to me being at work, working when midnight began. Linda Smith sent my upline supervisors within nursing service; an email on January 7, 2015 at 11:49 requesting them to issue a corrected timecard, to pay me for working both Holidays; Thanksgiving 2014 and Christmas 2014 due to midnight begins a new day at the VA Hospital.

Also, AFGE Union Representative Denise Madden sent out an email also stating her supervisor Jackie Garvin; stated Nursing Service should not have changed my Tour from Midnight to 8a.m. back to 11:30 p.m. and to pay me for working November and December 2014 holiday pay worked. I never receive my pay for Holiday worked on those holidays and I was working when midnight came in, giving The Agency more hours worked than my comparator Kurt Armbrust; whose Tour of Duty was and currently is Midnight to 8am. The 26th of February 2015 I received an email from Sandra Foster stating that I should contact Human Resources with my continued concerns and that she was going to initiate a new Rule/Policy that all MSA'S will work 3 Tours of Duty to be consistent. There are currently more than 3 tours of duty; Kurt Armbrust is currently working Midnight to 8am and I am consistently currently working 11:30pm to 8am; giving The Agency more time/hours and being compensated less. Kurt does

not have a 30-minute lunch break taken out of his paycheck as I do and he work less hours but get compensated more pay differentials and premiums.

I also have been harassed and not been paid all my overtime, night differentials, and premiums worked. I'm always sending emails concerning discrepancies and not being paid for overtime, night differentials and premium pay worked; very stressful, humiliating, and frustrating. Not only has the Agency violated the Federal Laws of Title VII and the Equal Pay Act; The Agency is in violation of its own company policies; as well as being non-compliant to its own Rules and Regulations.

## Retaliation

Denise Wright engaged in prior protected activity; 03/10/2009, 04/11/2011, 11/15/13, and 02/26/15. The most recent one; 11/15/2013 exactly 2 days before coming back to Nursing Services.

Nursing Service was aware of the prior protected activity; my previously supervisor; Anthony Farman informed me that he told them; confirming the good and the bad. Anthony Farman also gave Ms. Lois Goins (Ward Clerk Pool Supervisor) a negative reference and would not give his approval to Ms. Goins for me to work overtime.

Nursing Service management took some action adversely impacting; Denise Wright following the prior protected activity;

I file EEO with Nursing service February 26, 2015, management informed me that they would take the AWOL off my timecard but did not since I filed EEO February 26, 2015, because they would not acknowledge that they would pay me for holidays worked, nor change my tour of duty to be consistent with the other night MSA's that was working Midnight to 8am. Management

18

kept giving me the run around stating they would change my tour and pay me for Holidays worked concerning Thanksgiving and Christmas 2014; until time expired for me to file EEO. Denise was treated differently from Similar situated individuals/employees; Kurt Armbrust; who did not participate nor engage in protected activity as Denise Wright.

I had no poor job performance issues, no misconduct issues, my lack of qualifications for the change in tour of duty was not an issue. Nursing Service continues to not pay me all night differential, premium pay and holiday pay that is due to me; to include consistently not signing off (all officials) in a timely manner; which delays my pay.

*Also see where I attach a document from Nursing Service Chief Executed; Sandra Foster, dated June 28, 2018 from Sandra Foster to Sandra Foster concerning MSA's Tour of Duty; however, at the bottom is a Thank you Lois; therefore, it is obvious this has been tampered with and not the original official document that I had requested by way of FOIA last week. That FOIA Request was denied but they sent that document unofficial made up tampered with document; which is a Federal Offense.

* Also, all up management that was Affidavit by Paul Curran stated there was only 3 tours of duty.  See Attachments

**ELEMENTS OF A RETALIATION ACTION**

Courts use the same three-prong analysis they used for Title VII cases for retaliation cases. Thus, the plaintiff must first prove a prima facie case of retaliation. The burden then shifts to the defendant to show a legitimate non-discriminatory reason for the action taken and the plaintiff would then have to demonstrate that the reason the employer proffered was in fact pretextual. "In order to set forth a claim for retaliation the plaintiff must demonstrate a prima facie case of retaliation. Then the defendant must point to evidence of a legitimate non-retaliatory reason for the complained of action. If the defendant meets its burden, plaintiff must "demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir.1998)."
Gilford v. City of New York 2004 WL 1574695, *5 (S.D.N.Y.,2004)

Accordingly, the first hurdle that plaintiffs must meet is to establish a prima facie case of retaliation. Courts have set forth the essential elements a plaintiff would have to prove to establish a retaliation cause of action "To establish a prima facie case of retaliatory discrimination, Soto must establish the following four elements: (1) [she] engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection between participation in the protected activity and the adverse employment action. Id. at 713- 14. (citations omitted). Gagnon v. Sprint Corp., 284 F.3d 839, 850 (8th Cir.), cert. denied, 537 U.S. 1001, 123 S.Ct. 485, 154 L.Ed.2d 396 (2002); see Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 685 (8th Cir.2001); Buettner, 216 F.3d at 713-714. In addition to these requirements, the plaintiff must show that a reasonable person could believe that the alleged incidents would violate Title VII's standard. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S.Ct.

20

1508, 149 L.Ed.2d 509 (2001)". Soto v. John Morrell & Co. 285 F.Supp.2d 1146, 1176

(N.D.Iowa,2003). See also, Fortner v. Ameritech Corp. 50 Fed.Appx. 187, 188-189, 2002 WL

31379880,*2 (6th Cir.Mich. 2002)("In order to establish a prima facie case of retaliation, the

plaintiff must prove that: "(1) he engaged in activity protected by Title VII; (2) the exercise of

his civil rights was known to the defendant; (3) thereafter, the defendant took an employment

action adverse to the plaintiff; and (4) there was a causal connection between the protected

activity and the adverse employment action." Nguyen v. City of Cleveland, 229 F.3d 559, 563

(6th Cir.2000). Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to

the defendant to produce "some legitimate, nondiscriminatory reason" for the adverse

employment action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct.

1089, 67 L.Ed.2d 207 (1981) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802,

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the defendant is able to proffer a nondiscriminatory

reason for the adverse action, the burden shifts back to the plaintiff to produce credible evidence

that the reason offered by the defendant is a mere pretext for unlawful retaliation. Burdine, 450

U.S. at 253; McDonnell Douglas, 411 U.S. at 804.")

Armbrust current is assigned and works.  Kurt Armbrust and Denise Wright are under the same

Service (Nursing), we have and hold the same Job Title; Medical Support Assistant as well as the

same job description and duties.  We both adhere to the same Policies, Rules and Regulations.

We both have the same up-line decision maker; who has been and currently is; Sandra Foster,

Chief Executive of Nursing Service.

My assigned Tour of Duty is 11:30pm to 8am. Kurt Armbrust Tour of Duty is Midnight to 8am. I'm assigned and mandated to come in 30 minutes prior to Kurt, daily, and is forced to take a lunch break. I have voice my opinion to my supervisors as well as my up-line management team, Sandra Foster (Chief Executive of Nursing Service), but was told I must come in at 11:30pm to do a handoff (Nurses and Physicians do this because they take care of Patients directly/hands on. MSA's never had heard of handoffs prior to my request of changing my tour. It is when I requested the changed from 1130pm – 8am to Midnight to 8am, just as Kurt works, is when the word Handoff comes into play.

Kurt confirmed with me by email that his tour has always been Midnight to 8am and has never changed. Instead of Sandra Foster just doing the right thing and changing my tour, she sent out an email that she wanted all MSA's Tours to be consistent and that there are only 3 tours (07:30am to 4pm; 4pm to midnight; 11:30pm to 8am), however that is not the case there are approximately 12 different tours of duty, if not more, being worked by MSA's within Nursing Services. Ms. Foster, make it seem as it takes 30 minutes to tell another MSA that we have a patient(s), coming or leaving/ transferring within the units, but that is not the case. Once MSA's arrive at their assigned Nurses Station; there may be someone there to relieve us or there might not be someone to relieve a MSA. For whatever reason a MSA might have left for the night, or perhaps called in; it's not always a MSA there, to do a handoff, simple because our position and duties are not hands on direct patient care. Any information that an MSA should need is on our Bed Board Management system, that has been implemented within the hospital, which indeed informs everyone of transfers, new admits, etc. If it is someone available at the desk to give any information concerning transfers, it only takes 1 minute or less; however, if there is no one at the desk, then we get any information needed off the Bed Board Management System as well as the

Assigned Charge Nurse that is covering the unit for that Tour. Kurt tour of duty begins at midnight, and he comes in at midnight and gets off at 8am, he is treated more favorable than I, and we have the same title, which is Medical Support Assistant (MSA), Same General Schedule (GS-5), under the same Service (Nursing) and the same decision maker within Nursing Service; Sandra Foster, Chief Nurse Executive/Nursing Service. Kurt take a lunch break, and bring his lunchbox daily, however Kurt do not get a 30-minute lunch deducted from his paycheck as I do (I'm treated less favorable). So, I come in 30 minutes prior to Kurt, but Kurt is receiving Favoritism and more Benefits than me. Not only does Kurt not have to take a lunch, but Kurt is not required to come in 30 minutes prior as I do, to give a handoff, (I am treated less favorable), Nursing Service makes me take a 30-minute lunch; and deduct it from my pay check, however; Kurt do not have any deductions coming out of his pay check for his lunch break (30 minutes), and he takes a lunch break 30 minutes (I am treated less favorable). Most of the time I do not take a lunch. I take a couple 15-minute breaks and sometimes not even that. Sometimes I must cover all the med surgical units, because the other MSA's be off, and the other units call me for assistance. Another favorable benefit that Kurt has; he gets holiday pay when he first gets to work on a Sunday night at midnight if the holiday is on a Monday. Since I come in at 11:30pm. Nursing Service give me my holiday on Monday night at 1130pm. Even though I am here when midnight hits and comes in Sunday night, they make me wait to get my holiday pay on Monday night, Kurt get his at midnight the previous night, Sunday into Monday (Kurt is treated more Favorable). I request a tour change so I can get my holiday pay at midnight, the day prior of the holiday, such as my colleague/comparator; Kurt Armbrust, however, Nursing Service denied me.

I missed out on my holiday worked pay; Thanksgiving 2014 and Christmas 2014 because I was here 30 minutes prior to holiday coming in at midnight, but when midnight hit Kurt got it

because his tour starts at midnight but they made me wait until Monday night at 1130pm before

my holiday pay would start if I worked it. If I do not work it, then it would be holiday excused,

however other employees that work for the VA, same facility as I get their holiday pay when

midnight hits and their tour do not begin at midnight it began before midnight, however when

midnight hits and comes in, that is a new day. Nursing service would not change my tour of duty

to be the same as Kurt Armbrust to come in at midnight prior to the holiday coming in, like they

have done in the past for the holiday of Christmas 2013. I lost my Holiday Worked for 2014;

Thanksgiving and Christmas. They tried to delete it out of our Vista, Federal Government

System that my tour use to be midnight to 8am, but I have copies of the corrected timecards they

did, that confirms the timekeeper had changed my tour from 11:30pm - Midnight, to Midnight -

8am so I could get my holiday pay as I did for Christmas day 2013. It is notated on the corrected

timecards. I worked previously midnight to 8am a few weeks and my supervisor Shawnda

Swearengin verbally informed me, that I would not get Sunday premiums if I came in at

midnight, that I would have to come in at 11:30pm again as I did previously. She also informed

me that she would change my tour temporary to midnight to 8am once the holidays came, but I

asked her to change it permanently so I want to have to go through this again. I found out later

that, Kurt gets Sunday premiums and comes in at midnight. I have documents showing my past

tours was changed to midnight to 8am once before and I also have evidence of other MSA's

schedules and that there are more than 3 tours of duty currently being worked by MSA's, within

Nursing Service. However, Sandra Foster said there was only 3 tours of duty being worked by

MSA's.

Another issue is my premium pay, I have had a lot of premium pay/ weekends and night

differential that I have worked and did not get paid for, we have a new system, however it is

better and allows us as employees to see what has and what has not been posted concerning our timecards and hours worked. However, I send several emails concerning issues that concerns me, concerning what I have worked, and what they have fail to post. My supervisors/timekeeper, somehow, fails to post all my time/overtime that I have worked. I consistently send emails, but it consistently does not all get posted accurately and efficiently, therefore I'm not paid in a timely manner. Somehow when I take Annual Leave, due to me being in Use or Lose Status, that get posted right away as well as my leave balance decreases, but the overtime that I worked two and three weeks ago, did not get posted, and I have not got paid yet for working the overtime. And this did not just start since the new pay system been imitated a few weeks ago, this issue with me working overtime, and receiving my Premiums Pay, Night Differential, Holiday Pay and Overtime that is due to me, because I worked it, has been going on since I have come back to work in Nursing Services over 4 years; consistently harassment and for this reason I currently have no enjoyment in continuing to work overtime every other Friday, my enjoyment of Life is nonexistence currently.

## CONCLUSION

For these reasons Summary Judgement should not be granted.

Respectfully submitted,

DENISE P. WRIGHT/*Pro Se*
1000 Bittercress Drive
North Little Rock, Arkansas 72117
(501) 240-4962

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing was sent *via* electronic mail on this 1st, day of August 2019, to the following:

Jamie.dempsey@usdoj.gov
Assistant U.S. Attorney