**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DENISE WRIGHT**                                                                                    **PLAINTIFF**

**v.**                                   **CASE NO.  4:17-CV-00798 BSM**

**ROBERT WILKIE,**
**Secretary, Department of Veterans**
**Affairs, In His Official Capacity**                                              **DEFENDANT**

**ORDER**

The Department of Veterans Affairs's ("VA") motion for summary judgment [Doc.

No. 49] is granted, and Denise Wright's sex and race discrimination, retaliation, and Equal

Pay Act claims are dismissed with prejudice.  Wright's remaining claims are dismissed

without prejudice.  Wright's motion to deny defendant's reply [Doc. No. 59] is denied as

moot.

I. BACKGROUND

Wright brings this lawsuit pro se alleging that the VA discriminated against her in

violation of Title VII, 42 U.S.C. section 2000e-16(c).  When viewed in the light most

favorable to Wright, the undisputed facts are as follows:

Wright is a black woman who began working as a medical support assistant ("MSA")

for the Central Arkansas Veterans Healthcare System ("Veterans Health") in the Mental

Health Clinic in 2007.  Doc. No. 50, Ex. 1 ("Wright Dep.") 9:22–10:6.  Wright filed three

separate EEO claims about three separate supervisors in 2009, 2011, and 2013.  *Id.*

12:6–13:18, 13:24–14:14.

Wright left the Mental Health Clinic and was hired as an MSA in unit 4D in December 2013. *Id.* 14:9–19. Initially, her immediate supervisor was Shawnda Swearingen, but is now Rhonda Crutchfield. *Id.* 15:10–16:1. Wright's regularly assigned shift at 4D has been 11:30 pm–8:00 am. *Id.* 22:16–23:12.

Veterans Health's inclement weather policy, which gives the supervisor discretion whether to grant sick leave that has not been previously approved, was in effect on February 23, 2015. *Id.* 58:5–7, 60:9–15. Wright was scheduled to work that day but called in because she slipped and fell in the snow. *Id.* 58:8–59:3. When Wright returned to work on February 25, she requested sick leave for her February 23 absence. *Id.* 58:11–14, 59:12–60:2. Wright's request was denied, and she was listed as absent without leave ("AWOL"). *Id.* 60:5–8.

Kurt Armbrust is a white man who works as an MSA in the Medical Intensive Care Unit ("MICU"). *Id.* 46:16–18; Def.'s F., Ex. 4 ("Armbrust Dep.") 15:5–12. Armbrust began working for Veterans Health in 2003 and, until recently, was supervised by Jacqueline Nunn. Armbrust Dep. 15:24–16:3. Armbrust was never supervised by Shawnda Swearingen or Rhonda Crutchfield. *Id.* 19:8–12.

Wright filed an EEO claim with the VA on February 26, 2015, alleging the VA discriminated against her when it denied her request to shorten her work shift by thirty minutes, denied one of her requests for sick leave, and refused to pay her for one hour of overtime. *See* Compl., Doc. No. 2, at 4–5, 21–23. The EEO complaint also contained

allegations regarding events on February 16, 2015, which are not at issue herein. *See* Wright Dep. 62:2–4.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

A.      Race and Sex Discrimination

The VA's motion for summary judgment on Wright's race and sex discrimination claims is granted and those claims are dismissed with prejudice.

To establish a prima facie case of discrimination, Wright must show that (1) she was a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated

employees who are not members of the protected group ("comparators") were treated differently or more favorably when engaging in similar acts. *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003). An adverse employment action is a change in an employee's working conditions that causes a material employment disadvantage. *See Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." *Id.* Individuals used as comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Gilmore*, 319 F.3d at 1046.

It is undisputed that Wright satisfies the first two elements because she is a black woman and was meeting the legitimate expectations of her employer. Wright, however, has failed to show that she suffered an adverse employment action or that similarly situated employees were treated differently. Wright alleges she suffered adverse employment actions when: (1) her request to change her work schedule from 11:30 pm–8:00 am to 12:00 am–8:00 am was denied; (2) her sick leave request was denied; and (3) she was not paid for one hour of overtime. *See* Amended Complaint, Doc. No. 35, at 2.

First, the failure to shorten Wright's tour of duty by thirty minutes is not an adverse employment action. *See generally Pulley v. United Health Grp., Inc.*, 945 F. Supp. 2d 1019,

1028 (E.D. Ark.).  There is no evidence that this decision involved a reduction of any pay or

benefits or affected her future career prospects.  It is, at most, a minor inconvenience.

Second, the VA's refusal to grant sick leave for the day Wright missed as a result of

falling in the snow is not an adverse employment action.  *See Hardeman v. United States*,

682 F. Supp. 2d 947, 954 (E.D. Ark. Jan. 11, 2010) (denial of sick leave, without any

material change in employment, is not an adverse employment action); *Jackman v. Fifth*

*Judicial Dist. Dept. of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) (negative evaluations,

without further action, do not constitute adverse employment action).  The VA's inclement

weather policy gave Wright's supervisor discretion whether to grant sick leave when the

leave was not previously approved.  Neither Wright's failure to report for work, nor her

status as AWOL resulted in disciplinary action or changed her employment status, salary,

benefits, or future career prospects.

Third, the VA's failure to pay Wright for one hour of overtime is not an adverse

employment action.  The facts surrounding this issue are a little unclear, but it appears that

Wright is claiming that she should have been paid for two thirty-minute lunch breaks.  *See*

Complaint, Doc. No. 2 at 9, 16.  Adverse employment actions, however, are those that cause

a "materially significant disadvantage."  *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th

Cir. 1997).  Nothing in the record indicates that the VA intentionally denied this disputed

hour of overtime, that Wright's rate of pay was reduced, that her benefits were affected, that

any of her responsibilities were changed, or that this impacted her career prospects in any

way.  A dispute over one hour of overtime pay is simply not a "significant disadvantage."

Even if it is assumed that either of these allegations were an adverse employment action, Wright has failed to identify a similarly situated employee who is not a member of her protected group that was treated differently.  The only potential comparator Wright identifies is Kurt Armbrust; a white man, who works as an MSA in the MICU.  Wright claims that Armbrust is treated differently because he is allowed to work from 12:00 am–8:00 am—Wright's desired shift.

Wright and Armbrust are not similarly situated employees because they have never worked in the same unit, nor have they ever had the same supervisor.  *See Gilmore*, 319 F.3d at 1046.  Other than Wright's own unsupported statements, nothing in the record indicates that another MSA in Wright's unit has ever worked 12:00 am–8:00 am.  *See Doe v. Dep't of Veterans Affairs*, 519 F.3d 456, 460 (8th Cir. 2008) ("In order to create an issue for trial the nonmoving party must produce sufficient evidence to support a verdict in [her] favor based on more than speculation, conjecture, or fantasy.").

Finally, Wright identifies no comparators for her claim of being denied sick leave or her dispute over overtime pay.

For these reasons, there is no dispute of material fact on these claims, and the VA's motion for summary judgment is granted.

B.     Retaliation

The VA's motion for summary judgment is granted on Wright's retaliation claim.

To establish a prima facie case of retaliation, Wright must show that (1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events. *See Clegg v. Ark. Dep. of Corr.*, 496 F.3d 922, 928 (8th Cir. 2007). To establish this causal link, Wright is required to have evidence "that gives rise to an inference of retaliatory motive on the part of the employer." *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002). "Generally, more than a temporal connection . . . is required to present a genuine factual issue on retaliation." *Id.* An inference of retaliatory motive may be supported by evidence that the defendant was aware of the protected activity and that the date of the adverse employment action closely followed such activity. *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999). The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months. *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011).

No adverse employment action was taken against Wright, but even if it is assumed that one was, there is no evidence inferring retaliation. More than two months elapsed between the filing of Wright's last EEO claim (February 26, 2015) and when she was denied overtime pay (May 8, 2015), which is the first action that Wright claims was adverse. The elapsed time is too long to infer retaliation. *See Kipp*, 280 F.3d at 897 (8th Cir. 2002) (two-month interval insufficient, as a matter of law, to establish causal link).

C.      Equal Pay Act

The VA's motion for summary judgment is granted on Wright's Equal Pay Act claim.

To recover under the Equal Pay Act, Wright must prove that the VA discriminated on the basis of sex by paying different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). "Whether two jobs entail equal skill, effort, or responsibility requires practical judgment on the basis of all the facts and circumstances of a particular case" including experience, training, education, and ability. *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 719 (8th Cir. 2000).

Wright claims Armbrust, her only comparator, is paid more than she is paid. It is undisputed, however, that Armbrust has four years of seniority on Wright. *See* Armbrust Dep. 15:24–16:3; Wright Dep. 9:22–10:6. This is fatal to Wright's prima facie case of wage discrimination. *See Buettner*, 216 F.3d at 719; *Tenkku v. Normandy Bank*, 348 F.3d 737, 741 (8th Cir. 2003). Nothing indicates that the pay disparity is based on anything other than Ambrust's seniority.

D.      Unexhausted Claims

Wright's claims based on events that are alleged to have occurred in November and December 2014 and March of 2015 are dismissed for failure to exhaust administrative remedies.

Before filing a Title VII lawsuit, a plaintiff must file a charge of discrimination with

the EEOC or other federal agency with authority to seek relief.  42 U.S.C. § 2000e-5(e)(1);

42 U.S.C. § 2000e-16; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Each incident of discrimination and each retaliatory adverse employment decision constitutes

a separate actionable unlawful employment practice, and each requires a separate charge.

*Morgan*, 536 U.S. at 114.  Wright's EEO claim does not include allegations of events that

occurred in November and December of 2014 and March of 2015, and any claim based on

those events is dismissed without prejudice for failure to exhaust administrative remedies.

## IV. CONCLUSION

The VA's motion for summary judgment [Doc. No. 49] is granted.  Wright's sex and

race discrimination, retaliation, and Equal Pay Act claims are dismissed with prejudice.

Wright's remaining claims are dismissed without prejudice.  Wright's motion to deny

defendant's reply [Doc. No. 59] is denied as moot.

IT IS SO ORDERED this 21st day of August 2019.

_____
UNITED STATES DISTRICT JUDGE